**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 25-cv-00763-REB-TPO

ALEX RAINEY,

    Plaintiff,

v.

APPLIED INDUSTRIAL TECHNOLOGIES, INC., and
LORI PULICE,

    Defendants.

---

## ORDER DENYING PARTIAL MOTION TO DISMISS

**Blackburn, J.**

The matter before me is **Defendants' Partial Motion To Dismiss** [#22],[1] filed August 1, 2025. I deny the motion.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 (diversity of citizenship).

### II. STANDARD OF REVIEW

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove

---

[1] "[#22]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

no set of facts in support of his claim which would entitle him to relief.'" ***Kansas Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Concluding that standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).

Under the standard announced in ***Twombly***, the court reviews the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Twombly***, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." ***Kansas Penn Gaming***, 656 F.3d at 1215 (citation and internal quotation marks omitted).

While I must accept all well-pleaded factual allegations of the complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002), mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" are no longer sufficient to defeat a motion to dismiss, ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted). ***See also Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could

2

satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted).

Instead, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949. **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.") (emphases in original). For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965). The standard is not met by allegations which are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248. Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.** The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn Gaming**, 656 F.3d at 1215. Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." **Dias v. City and County of Denver**, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting **Twombly**, 127 S.Ct. at 1965) (internal quotation marks omitted).

## III.  ANALYSIS

Plaintiff, Alex Rainey, was previously employed by defendant, Allied Industrial Technologies, Inc. ("Allied"), as Driver/Stockroom Expeditor Associate in Allied's Denver warehouse.  Mr. Rainey has Type 1 diabetes, for which he has received medical treatment since childhood.  (**Compl.** ¶ 3 at 2, ¶¶ 22-23 at 5.)  Early in his employment, Mr. Rainey made his supervisor aware of his medical condition.  He alleges his diabetes typically did not affect his ability to perform his job, as he was able to manage his condition in such a way to "limit[] his need for reasonable accommodation to only modest time off work and reasonable break time to stabilize his blood sugar while working."  (*Id.*, ¶¶ 25-26 at 5-6.)

Nevertheless, Mr. Rainey experienced a series of hypoglycemic episodes during the course of his employment.  At some point after beginning his job in March 2023, Mr. Rainey experienced symptoms of low blood sugar while making a delivery in a company vehicle.  He informed the general manager of the warehouse about this episode, which he managed by stopping to drink a soda and waiting until his blood sugar stabilized to resume driving.  (*Id.* ¶ 27 at 6.)

Mr. Rainey experienced another hypoglycemic episode in May 2023 wherein he became confused.  He was allowed to use break time to drink a soda, and he alleges that although his condition improved, his supervisor and the general manager told him to leave work and not return until they contacted him.  The following day, he was told he could not return to work until he provided a doctor's note.  Ultimately, a doctor certified Mr. Rainey was medically able to work, and he returned to the warehouse.  (*See id.* ¶ 5 at 2, ¶¶ 28-33 at 6-7.)

4

Less then two months after this episode, Mr. Rainey lost consciousness while on a lunch break due to low blood sugar. After paramedics stabilized his condition, Mr. Rainey returned to work, but was told to leave within an hour. On July 6, 2023, defendant Lori Pulice, a human resources officer for Applied, informed Mr. Rainey he could not return to work until he provided a doctor's note. Mr. Rainey alleges he provided such a note on July 18, allegedly confirming he had no limitations which would affect his ability to perform his job and stating he was managing his blood sugar effectively. (*Id.* ¶ 6 at 2-3, ¶¶ 41.)

Nevertheless, on August 4, 2023, Ms. Pulice told Mr. Rainey he would not be permitted to return to work unless he participated in a conference call with his physician and Allied. A few days later, Ms. Pulice added the further requirement that Mr. Rainey also would need to provide a current doctor's letter certifying he was medically stable to return to work. (*Id.* ¶ 7 at 3, ¶¶ 42-46 at 8.)

During the telephone conference, which took place on August 15, Mr. Rainey's doctor allegedly confirmed Mr. Rainey's ability to safely perform his job and offered, further, to provide Allied with a detailed plan to manage Mr. Rainey's blood sugar as effectively as possible to avoid or at least minimize future hypoglycemic episodes. The plan, which Mr. Rainey forwarded to Allied the following day, proposed the following:

> (1) that Mr. Rainey be permitted to monitor his blood sugar at least five time a day at specific, set times;
>
> (2) that Mr. Rainey be permitted to keep sugar tablets or other forms of rapidly absorbed sugar on his person while at work;
>
> (3) that Mr. Rainey make an appointment with an

5

> endocrinologist to more stringently monitor and control his blood sugar;
>
> (4) that Mr. Rainey discuss obtaining a continuous glucose monitor with an endocrinologist; and
>
> (5) that Allied allow Mr. Rainey to take short breaks, of approximately the same length as bathroom breaks, to test and manage his blood sugar.

(*Id.* ¶ 8 at 3, ¶¶ 50-53 at 9.) Four days later, on August 20, and without further discussion with Mr. Rainey, Allied terminated his employment effective the following day, claiming it did not have sufficient information demonstrating Mr. Rainey could return to work safely. (*Id.* ¶¶ 57-61 at 10.)

This lawsuit followed. Herein, Mr. Rainey brings claims against Allied under the Colorado Anti-Discrimination Act ("CADA"), §24-34-400.2 – 24-34-408, C.R.S., for disability discrimination and retalitation, as well as against Ms. Pulice for aiding and abetting unlawful employment practices, *see* §24-34-402(1)(e)(I), C.R.S. Defendants have moved to dismiss the aiding and abetting claim, arguing Ms. Pulice cannot be held liable for conspiring with her employer under the intra-corporate conspiracy doctrine. Allied also maintains the complaint fails to assert a plausible claim for retaliation because it purportedly does not allege facts sufficient to demonstrate Mr. Rainey requested a reasonable accommodation that was not already being provided to him. I disagree on both counts, and therefore deny the motion.

By its first argument, Allied contends the aiding and abetting claim is not viable because, as a matter of law, an employer and an employee acting within the course and scope of her employment are considered to be a single person, and thus Ms. Pulice

6

cannot aid and abet herself.  This argument is based on an extension of the intra-corporate conspiracy doctrine, which holds that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy" because "[w]hen two agents of the same legal entity make an agreement in the course of their official duties, . . . as a practical and legal matter their acts are attributed to their principal," and thus "there has not been an agreement between two or more separate people."  **Ziglar v. Abbasi**, 582 U.S. 120, 153, 137 S.Ct. 1843, 186, 198 L.Ed3d 290 (2017).  Colorado courts have applied this doctrine to civil conspiracies, **see Pittman v. Larson Distribution Co.**, 724 P.2d 1379, 1390 (Colo. App. 1986), as have federal courts in this district when applying Colorado law, **see Kerstien v. McGraw-Hill Cos**., 7 Fed. Appx. 868, 875 (10th Cir. 2001);[2] **Titan Manufacturing Solutions, Inc. v. National Cost, Inc.**, 2020 WL 996880 at *3 (D. Colo. March 2, 2020).

In considering whether to extend this same principle to aiding and abetting claims under CADA, courts in this district have reached divergent conclusions.  For its part, Allied relies on Judge Arguello's decision in **Judson v. Walgreens Co.**, 2021 WL 1207445 (D. Colo. March 31, 2021), wherein she concluded the intra-corporate conspiracy doctrine precluded an aiding and abetting claim against the individual

---

[2]  **But see Brever v. Rockwell International Corp.**, 40 F.3d 1119, 1127 (10th Cir. 1994) (declining to extend doctrine to federal civil rights lawsuits: "In these situations, the action by an incorporated collection of individuals creates the 'group danger' at which conspiracy liability is aimed, and the view of the corporation as a single legal actor becomes a fiction without a purpose.") (citation and internal quotation marks omitted).  **Cf. Ziglar**, 137 S.Ct. 1868-69 (stating in dicta that intra-corporate conspiracy doctrine might prevent suits against individual government actors in their official capacities in suits under 42 U.S.C. § 1985(3), but declining to decide the issue because the law was not clearly established and the officers therefore were entitled to qualified immunity regardless).

defendants: "To conclude otherwise in this case would invite individual liability against supervisory employees for any allegedly discriminatory actions they took within the scope of their employment. . . . This Court declines to read such sweeping liability into the statute." *Id.* at *5.

Mr. Rainey, however, points to the decision in **Morales v. Law Firm of Michael W. McDivitt, P.C.**, 641 F.Supp.3d 1035 (D. Colo. 2022),[3] in which Judge Martinez reached the opposite conclusion. Relying on that portion of the magistrate judge's report and recommendation which the district judge rejected in **Judson**, Judge Martinez focused on CADA's explicit reference to "employees" as a separate category of potentially liable parties distinct from "employers." **See** §24-24-402(1)(e)(I), C.R.S. He noted also that the Kentucky case on which **Judson** relied interpreted a statute which did not include such a specific reference to "employees" as a separate group. **Morales**, 641 F.Supp.3d at 1042 (citing Ky. Rev. Stat. § 344.280(2)). Ultimately, he concluded the "unambiguous language" of CADA "expresses the legislature's clear intent to allow plaintiffs to assert claims against fellow employees and supervisors who aid and abet an employer's unlawful employment practices," and thus "forecloses application of the intracorporate conspiracy doctrine." *Id.* at 1041 (quoting **Judson v. Walgreens Co.**, 2020 WL 9078332 (D. Colo. Sept. 10, 2020), ***report and recommendation adopted in***

---

[3] Allied's failure to apprise the court of the existence of this contrary precedent in its motion is a serious breach of its duty of candor to the court. "[O]fficers of our court have an unfailing duty to bring to our attention the most relevant precedent that bears on the case at hand – both good and bad – of which they are aware.*"* **In re Murray**, 586 Fed. Appx. 477, n.1 482 (10th Cir. Nov. 18, 2014) (quoting **Jewelpak Corp. v. United States**, 297 F.3d 1326, 1333 n.6 (Fed. Cir.2002)) (internal quotation marks omitted). **See also Hill v. Norfolk & Western Railway Co.**, 814 F.2d 1192, 1198 (7th Cir.1987) ("The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless."); **Wallic v. Owens-Corning Fiberglass Corp**., 40 F.Supp.2d 1185, 1190 (D. Colo. 1999) ("[A]n attorney has an ethical responsibility . . . to be honest with the court.").

*part, rejected in part*, 2021 WL 1207445 at *6 (D. Colo. March 31, 2021)) (internal quotation marks omitted).[4] At least four Colorado state district courts also have interpreted the statute to preclude application of the intra-corporate conspiracy doctrine to aiding and abetting claims under CADA.  (**See Resp. App.**, Exhs. 2-5.)

While this court is not bound by any of these decisions, I find the reasoning of **Morales** and the report and recommendation in **Judson** to be the more persuasive. "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." **Lamie v. United States Trustee**, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (citation and internal quotation marks omitted).  **See also In re Woods**, 743 F.3d 689, 694 (10th Cir. 2014); **Federal Deposit Insurance Corp. v. RBS Acceptance Inc.**, 611 F.Supp.3d 1089, 1096 (D. Colo. 2020); **People v. J.J.H.**, 17 P.3d 159, 162 (Colo. 2001).  The aiding and abetting provision "[c]learly[ ] . . . draws a distinction between an employer and its employees, i.e., the statute does not consider them to be a single entity."  **Judson**, 2020 WL 9078332 at *5 (Varholak, M.J.) (citation and internal quotation marks omitted).  Moreover, it is not absurd to conclude that the Colorado legislature was aware of the contrary language and interpretation of the

---

[4] More recently, Judge Crews chose yet a third way, concluding "that an employee may not be held liable for aiding and abetting an employer when it is the employee's own discriminatory conduct that gives rise to the employer's liability . . . . Instead, the statute clearly contemplates employee liability only where the employee assists or facilitates another's discriminatory conduct."  **Yousif v. Penkhus Motor Co.**, 2025 WL 2643505 at *3 (D. Colo. Sept. 15, 2025).  I disagree as to the clarity of the statute in this regard.

9

Americans with Disabilities Act,[5] as well as the existence of the judge-made intra-corporate conspiracy doctrine, **Vaughan v. McMinn**, 945 P.2d 404, 409 (Colo. 1997), and chose to expand the scope of CADA by enacting the "broadly-worded" aiding and abetting provision, **Bank v. Allied Jewish Federation of Colorado**, 4 F.Supp.3d 1238, 1241 (D. Colo. 2013).

Because **Morales** and the recommendation in **Judson** take the Colorado legislature at its word, as required by settled canons of statutory construction, I find those decisions more persuasive than the district court's opinion in **Judson**. Moreover, the allegations of the complaint are more than sufficient to assert a plausible claim for violation of the aiding and abetting provision of the statute against Ms. Pulice. Accordingly, the motion to dismiss that claim will be denied.

The motion also must be denied insofar as it seeks dismissal of Mr. Rainey's claim of retaliation. In this regard, Allied asserts that the action plan Mr. Rainey presented to Allied was not sufficiently specific to put Allied on notice that he required an accommodation.[6] See **E.E.O.C. v. C.R. England, Inc.**, 644 F.3d 1028, 1049 (10th Cir. 2011) ("[B]efore an employer's duty to provide reasonable accommodations – or

---

[5] The ADA does not include an analogue to CADA's aiding and abetting provision; it permits suits only against "employers" as that term is defined by the statute. **See** 42 U.S.C. §§ 12111(2) & 12112. For that reason, it has been interpreted to "preclude[] personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition." **Butler v. City of Prairie Village, Kansas**, 172 F.3d 736, 744 (10th Cir. 1999).

[6] Allied's suggestion that Mr. Rainey's retaliation claim merely restates his discrimination claim is a non-starter. While "a failure to accommodate cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim," **Vanech v. Walsh**, 2022 WL 4010014 at *8 (D. Colo. July 8, 2022) (citation and internal quotation marks omitted), **adopted**, 2022 WL 4010005 (D. Colo. Aug. 5, 2022), Mr. Rainey's termination clearly was an adverse employment action sufficient to support a retaliation claim, **McInerney v. United Air Lines, Inc.**, 463 Fed. Appx. 709, 716 (10th Cir. 2011).

10

even to participate in the 'interactive process' – is triggered . . ., the employee must make an adequate request, thereby putting the employer on notice."). I disagree.

For one thing, as Allied acknowledges, Mr. Rainey did make a specific request for regular, short breaks up to five times a day for blood sugar monitoring. However, its argument that Mr. Rainey already was receiving this accommodation finds no support in the allegations of the complaint. There is nothing in the complaint substantiating how many short breaks Mr. Rainey was allowed during a workday, and it is not unreasonable to infer from his allegations that his plan called for more breaks than typically would be permitted.[7]

Nor can the court discount the possibility that the request to allow Mr. Rainey keep some form of rapidly absorbed sugar on his person did not require an accommodation. Given that Mr. Rainey's preferred method of dealing with his hypoglycemic episodes appears to have been drinking soda, nothing in the facts alleged forecloses an inference that having soda on his person while performing his work duties was not generally allowed and/or that Mr. Rainey might require additional breaks to drink a soda and recover.

Further, the plan called for Mr. Rainey to make an appointment with an endocrinologist. "An allowance of time for medical care or treatment may constitute a reasonable accommodation." ***Rascon v. USW. Communications, Inc.***, 143 F.3d

---

[7] To the extent Allied means to rely on the allegations showing Mr. Rainey's supervisors previously allowed him to take breaks when he experienced hypoglycemic episodes at work, those breaks were permitted only reactively. The action plan clearly implicates a request for proactive breaks to allow Mr. Rainey to monitor his blood sugar and better manage his diabetes. Moreover, the fact that Mr. Rainey was sent home and not permitted to return until cleared by a doctor after these episodes shows the provision of these "breaks" cannot really be considered an accommodation of any kind.

1324, 1333-34 (10th Cir. 1998), **overruled on other grounds as recognized in Herrmann v. Salt Lake City Corp.**, 21 F.4th 666, 677 (10th Cir. 2021). It therefore is entirely reasonable to infer the need for such an accommodation from the allegations of the complaint.

There is no requirement that a request for accommodation "formally invoke the magic words 'reasonable accommodation;'" it need only "make clear that the employee wants assistance *for his or her disability*." **C.R. England, Inc.**, 644 F.3d at 1049 (citation and internal quotation marks omitted; emphasis in original). Mr. Rainey's entire plan of action clearly constituted a request for specific accommodations for his disability.[8] Four days after submitting it, he was terminated. He therefore plausibly has alleged a viable claim of retaliation.

**THEREFORE, IT IS ORDERED** that **Defendants' Partial Motion To Dismiss** [#22], filed August 1, 2025, is denied.

Dated November 19, 2025, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

---

[8] Allied's suggestion that Mr. Rainey was merely a "passive participant" in an interactive process which it initiated bears no resemblance whatsoever to the facts alleged in the complaint. Allied's repeated requests for medical confirmation of Mr. Rainey's fitness for his job and demand to speak to his doctor before allowing him to return to work can not be construed as the type of interactive process envisioned by the disability discrimination laws. Indeed, based on the allegations of the complaint, once presented with Mr. Rainey's plan, Allied did not engage in the interactive process at all, but simply terminated his employment.